## BRACKEN et ux. v. VAN ZANDT COUNTY et al.

No. 11481.

Court of Civil Appeals of Texas. Dallas.
June 30, 1934.

Rehearing Denied Sept. 29, 1934.

Edwin M. Fulton, of Gilmer, for appellants.

West & Stanford, of Canton, for appellees.

LOONEY, Justice.

On January 1, 1931, J. A. Bracken and wife owned the fee-simple title to 113 acres of land in Van Zandt county, and a one-eighth royalty interest in the oil and gas produced therefrom, under certain lease contracts theretofore executed by them; also owned as assignees royalty interests in the oil and gas produced from certain other lands in the county, under leases theretofore executed by the owners of said lands. The 113 acres were regularly assessed for the year 1931, and the taxes due the state, county, and the Van Independent School District No. 53 were paid. The royalty interests, as above stated, were separately assessed, but plaintiffs, refusing to pay the taxes thereon, brought this action to enjoin the county of Van Zandt, the Van Independent School District, and their tax assessing and collecting officers, from collecting, or attempting to collect, all or any part of said taxes.

Defendants answered by general demurrer and general denial, and in a cross-action, joined by the state of Texas, as intervener, sought judgment against plaintiffs for the amount of said taxes against their royalty interests, with accrued interest and penalties, and foreclosure of the lien given by law.

On trial without a jury, the court rendered judgment, to the effect that plaintiffs take nothing by their action for injunctive relief; that the state of Texas, the county of Van Zandt, and the Van Independent School District No. 53, recover of and from plaintiffs the amount of said taxes, interest, and penalties, with foreclosure of the tax lien, from which they appealed.

In several assignments and propositions, plaintiffs question the legality of the assessments involved, contending that, having rendered their acreage—113 acres—for the year 1931, and the same having been accepted, the tax assessor and Board of Equalization were without jurisdiction or authority, in the absence of a controversy between the owner

and the tax assessor, to separate the land into different estates and place the royalty interests owned by plaintiffs upon the unrendered roll.

■ The legality of the assessments, we think, is conclusively established by the undisputed facts. The agreed statement, among other things, recites that: "It is further agreed that all the Royalty Interests above mentioned were owned by plaintiffs on January 1, 1931, and that plaintiffs did not render said royalty interests for taxes as royalty, but appeared before the Board of Equalization when notified and protested against the Royalty Interest being assessed for taxation; that the defendants, County of Van Zandt and Van Independent School District, No. 53, and the intervenor, State of Texas, regularly assessed the Royalty Interest above set out for taxes against plaintiffs for the year, 1931, and that the taxes for both of said defendants against the plaintiffs, and the taxes in favor of the intervenor against the plaintiffs have been regularly levied and assessed by the taxing officials of said defendants, and intervenor, at the reasonable market value thereof, and that all things necessary to be done have been duly and legally done, and that all statutes necessary to have been complied with in the assessment, rendition and collection of taxes have been duly and legally done, as provided for by statute and that the sum of Four Hundred Sixty-Nine and 65/100 Dollars ($469.65) is now due the Van Independent School District No. 53, for taxes for the year 1931, which includes interest and penalties as follows: $404.87 taxes, $40.49 penalty and $24.29 interest; and that the sum of $2066.86 is now due Van Zandt County and the State of Texas, for taxes for the year, 1931, which amount includes taxes, penalty and interest; and that the plaintiffs did render for taxation in Van Zandt County the surface estate on the so-called 113 acres in the Walling survey at Ten Dollars ($10.00) per acre, and that the taxes have been paid thereon and that plaintiffs did not render any of the Royalty Interest above mentioned for taxation." These undisputed facts, in our opinion, leave no room for the existence of a doubt that the assessments involved were according to law and are valid.

■ The only other contention urged by plaintiffs is that the oil and gas leases, from which the royalty interests claimed by them arose, conveyed to the respective lessee all oil and gas in place, consequently left no interest in the lessor, taxable as real estate.

Plaintiffs rely upon the holding of the Supreme Court in Ehlinger et al. v. Clark, 117 Tex. 547, 8 S.W.(2d) 666, to sustain their contention, whilst defendants counter with the proposition that the one-eighth royalty interests owned by plaintiffs are taxable as real property, and rely for authority upon the doctrine announced by the Supreme Court in Hager v. Stakes, Tax Collector, 116 Tex 453, 294 S. W. 835, 838.

Plaintiffs concede that their contract, leasing 40 acres, part of the 113 acres owned by them, expressly reserved one-eighth of the oil and gas in place, and that same was properly taxed as real property, hence with reference to the taxes against such interest they are not entitled to the injunctive relief sought. The other lease contracts involved, seven in number, are similar, in the usual form, recite a cash consideration received, and contain certain covenants and agreements to be paid, kept, and performed by the lessee; the instruments grant, lease, and let to lessee the lands, for the sole and only purpose of mining and operating for oil and gas, laying of pipe lines, erection of buildings, tanks, stations thereon, necessary for the production and saving of oil and gas, etc. In consideration of the premises, lessees covenanted and agreed: (1) To deliver to the credit of lessors, free of costs, in the pipe line to which lessees may connect the well, the equal one-eighth part of oil produced and saved from the leased premises; (2) to pay to the lessor as royalty for gas from each well, where gas only is found and sold, or used, one-eighth of its market price at the well; and (3) one-eighth of the market value of gas used by lessee for the manufacture of gasoline, etc.

The royalty interests the Supreme Court had under consideration, in Hager v. Stakes, Tax Collector, supra, held taxable as real property, were—save one—evidenced by contracts similar in all material respects to the lease contracts under consideration; hence the question presented there is precisely the same presented here, i. e., whether or not oil and gas royalty interests are taxable as real property. The adjudication by the Supreme Court was in the form of answers to certified questions, the pivotal one being No. 3, as follows: "Question No. 3. Are the royalty interests retained in the instruments involved in this suit property within the meaning of article 7503 (now article 7145), Vernon's Sayles' Civil Statutes, which provides: 'All property, real, personal or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and

the same shall be rendered and listed as herein prescribed'?" The court said: "We answer to question No. 3 that the interests retained by these lessors was property and was real property within the meaning of article 7503 (now article 7145), Vernon's Sayles' Texas Civil Statutes." So, it is perfectly obvious that the precise question involved has been decided by the Supreme Court adversely to the contention of plaintiffs. To the same effect, see Ferguson v. Steen, Tax Collector (Tex. Civ. App.) 293 S. W. 318; Stair v. Smith, County Judge (Tex. Civ. App.) 299 S. W. 660; Cobb v. Downing (Tex. Civ. App.) 1 S.W.(2d) 508 (writ refused); Taylor v. Higgins Oil & Fuel Co. (Tex. Civ. App.) 2 S.W. (2d) 288, 295; Federal Royalty Co. v. State (Tex. Civ. App.) 42 S.W.(2d) 670.

However, in the later case of Ehlinger, County Judge, v. Clark, 117 Tex. 547, 8 S.W. (2d) 666, 670, the Supreme Court had under consideration an oil and gas lease similar, in all material respects, to the contracts involved in Hager v. Stakes, and said with reference to the Ehlinger-Clark lease that: "Under the contract, as we view it, the county parts with its title to all the minerals in place, and obtains a moneyed consideration of $4,000, and, in addition, the usual one-eighth royalty from the oil produced. That such a transaction is a sale of the minerals in place is the established law, we think, in this state." This view seemingly conflicts with the construction given to similar contracts, in Hager v. Stakes, Tax Collector, where it was held that the one-eighth royalty interest, retained by lessor in the oil and gas when produced, was an interest in realty, and that, under such a contract, the lessee was vested with only seven-eighths of the oil and gas in place.

Whether or not these decisions of the Supreme Court are really in conflict is a question for the Supreme Court itself. However, we deem it immaterial, whether they are harmonious or discordant, in so far as the case at bar is concerned, for if, as apparently held in Hager v. Stakes, such a contract invests the lessee with only seven-eighths of the oil and gas in place, leaving the lessor in the undisturbed ownership of one-eighth thereof, such an interest, being a part of the mineral estate, would clearly be taxable as real property; or even if, as apparently held in Ehlinger v. Clark, such a lease contract conveys the mineral estate in its entirety, a stipulation that one-eighth of the oil and gas produced therefrom shall be delivered to the lessor or settled for, evidences a right that

belongs or appertains to said estate, which, in our opinion, comes within the definition of "real property" for the purposes of taxation, given in article 7146, R. S., as follows: "Real property for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

We therefore hold that the royalty interests involved, whether considered parts of the oil and gas in place, or simply royalties from oil and gas produced, are taxable as real property.

The judgment of the court below is affirmed.

Affirmed.